UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.                       ) | CRIMINAL NO. 04-10037-MLW |
| ) | |
| YASIM TAHSIR             ) | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS REQUEST FOR LEAVE TO FILE DISMISSAL

The government hereby responds to the March 25, 2004 Memorandum and Order of this Court and provides this memorandum in support of the amended dismissal of the indictment filed herewith. Given the willingness of every other court that has reviewed the refusal to grant an uncontested Rule 48(a) motion to accept the oral or written representations of the prosecutor as an officer of the court, the government asks this Court to accept the more detailed amended dismissal and this memorandum in lieu of the requested affidavit.

### Factual Statement

Defendant Yasim Tahsir, a/k/a Yasim Tashir ("Tahsir") is a native and citizen of Guyana. He was deported from this country on February 10, 2000. On January 22, 2004, Tahsir was turned over to the deportation section of Immigration and Customs Enforcement ("ICE")(formerly INS) by the Boston Police Department. He was arrested and detained at the Suffolk House of Correction under ICE's statutory authority to detain previously deported aliens subject to administrative reinstatement/removal procedures. The following day, January 23, 2004, Tahsir was

served with a Notice of Intent/Decision To Reinstate Prior Order, and stated that he did not wish to make a statement contesting the reinstatement decision. Four days later, on January 27, 2004, an authorized ICE official, after a review of the administrative file, determined that Tahsir was subject to removal through reinstatement of his prior order of deportation and certified the reinstatement of the prior order.

Two weeks after the reinstatement of the prior order of deportation (February 10, 2004), a letter was sent to the Washington, DC office of ICE responsible for obtaining travel documents for deportable aliens from Guyana.[1] The following day (February 11, 2004), an indictment was returned against Tahsir, charging him with unlawful reentry after deportation, in violation of 8 U.S.C. §1326.

### Potential Rule 5(a) Issue[2]

Tahsir was arrested and came into ICE custody on January 22,

---

[1] Generally, such a letter, called a travel document request letter, is sent by mail to the consulate of the alien's native country. However, requests for travel documents from Guyana are specially routed through an ICE office in Washington, DC, which then delivers the requests to the Guyana consulate in Washington. Guyana is extremely slow in responding to such requests. In fact, a travel document has not yet been received for Tahsir.

[2] Rule 5(a) provides in pertinent part: "[A]n officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge . . ."

2004.³ ICE took immediate steps to commence his removal from this country. The day after Tahsir's arrest, he was served with a notice that ICE intended to administratively reinstate his prior order of removal. Four days later (two of which were weekend days), an authorized ICE official reinstated Tahsir's prior deportation order. Fourteen days later, and one day before Tahsir was indicted, the travel document request letter was sent through appropriate channels to obtain Guyana's required permission to return Tahsir to his native country.⁴

As ICE acted under its civil arrest and detention authority, Tahsir was not brought before a federal magistrate judge until after his indictment in this Court. The ramifications of an ICE arrest under its civil arrest authority

---

³ICE exercised its statutorily granted power to arrest illegal aliens by arresting Tahsir on January 22, 2004. 8 U.S.C. §1226(a) (authority to arrest and detain aliens). ICE is also statutorily permitted to reinstate prior deportation orders, as it did in this case on January 27, 2004, after the required administrative review and certification by an ICE official. 8 U.S.C. §1231(a)(5) (reinstatement of removal orders against prior deportees). Upon reinstatement of a prior order of removal, an alien is not eligible for any relief from removal, except upon a showing that the alien's life or freedom would be threatened in his/her native country. 8 U.S.C. §1231(b)(3)(A) and (B). ICE has 90 days following issuance and service of the order of removal to effect the removal of the alien from this country. 8 U.S.C. §1231(a)(1)(A). Moreover, during the authorized removal period, an alien such as Tahsir, subject to a reinstatement order, must be detained. 8 U.S.C. §1231(a)(2).

⁴As Tahsir was indicted 20 days after his civil arrest by ICE, no conceivable violation of the Speedy Trial Act occurred, even if his civil arrest were to be considered to have triggered the 30-day speedy trial clock. 18 U.S.C. §3161(b).

3

of an alien subsequently prosecuted for unlawful reentry under 8 U.S.C. §1326 have been the subject of extensive litigation before this Court, as well as other sessions of the district court. See United States v. Cabral, Criminal No. 98-10188-MLW, 1998 WL 1543567 (D. Mass. 1998); United States v. Beckford, Criminal No. 00-10075-MLW (decision rendered in open court June 30, 2000); see also United States v. Castillo-Renya, Criminal No. 99-10245-RCL; United States v. Lopez, Criminal No. 99-10255-MEL; United States v. Gomez-Estrada, Criminal No. 99-10376-NG. The First Circuit has also dealt with the Rule 5(a) issue in unlawful reentry cases since Beckford. United States v. Encarnacion, 239 F.3d 395 (1st Cir. 2001); United States v. Tejada, 255 F.3d 1 (1st Cir. 2001). Tahsir's counsel, a member of the Federal Defender Office, is well aware of the jurisprudence on this issue in this district as the Cabral, Beckford, Castillo-Reyna, and Gomez-Estrada cases were handled by colleagues in his office, while he himself was defense counsel in the Lopez case.

Based on cases to date, particularly the Cabral and Beckford cases decided by this Court, the Rule 5(a) issue arguably presented in this case is whether the fourteen days that elapsed between the reinstatement of Tahsir's prior order of deportation and the travel document request turns his civil arrest into a de facto criminal arrest, triggering Rule 5(a)'s required prompt appearance before a federal magistrate judge.

4

For the many reasons stated by the government in the Beckford case, [see Government's Proposed Findings Of Fact And Supplemental Memorandum In Opposition To Defendant's Motion To Dismiss, filed May 19, 2000 in United States v. Beckford, supra.], no violation of Rule 5(a) occurred in this case. In fact, the First Circuit's holding in Encarnacion that unlawful reentry after deportation in violation of 8 U.S.C. §1326 qualifies as a status offense strengthens some of the arguments made by the government in Beckford. Encarnacion, 239 F.3d at 399. However, the government acknowledges, and Tahsir's counsel knows based on the facts of this case, that Tahsir has a non-frivolous motion to dismiss based on a claimed violation of Rule 5(a). In Beckford, several days of hearings occurred before this Court to explore the purposes for Beckford's arrest and to explain the seven-day lapse in that case between Beckford's arrest by ICE and the request to the Jamaica consulate for issuance of a travel document for Beckford. The government's decision to dismiss the indictment against Tahsir is based on its judgment, given Tahsir's ability to be immediately removed from this country (upon receipt of the requested travel document), that its limited resources should not be used to litigate whether the government's conduct in this case falls within the procedures

permitted by Beckford, Encarnacion, and Tejada.[5]

## Discussion

Rule 48(a) provides in full: "The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." Fed. R. Crim. P. 48(a). As stated by the United States Supreme Court: "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." Rinaldi v. United States, 434 U.S. 22, 29, n.15 (1977) (per curiam). The "principal" object of Rule 48(a) is not in play in this case, as the government asks leave to file a dismissal with prejudice, and Tahsir has specifically informed this Court that he does not object to the dismissal of the indictment on that basis. [See Defendant's Response To Court's Order Of March 25, 2004, filed March 26, 2004].

The Supreme Court in Rinaldi also recognized lower court decisions that would permit a district court to deny a Rule 48(a)

---

[5]This case would not alter the procedural framework for reinstatement/reentry cases that this Court found acceptable in Beckford. The Rule 5(a) issue in this case would be case specific, and would focus on whether ICE complied with the procedures validated in Beckford and accepted by the First Circuit in Encarnacion and Tejada.

dismissal to which the defendant consents "if the motion is prompted by considerations clearly contrary to the public interest." Rinaldi, 434 U.S. at 29, n.15. However, neither the Supreme Court in Rinaldi, nor the First Circuit, has held that such discretion exists. In fact, some appellate decisions reviewing a district court's refusal to grant leave to file a Rule 48(a) dismissal, merely assume, without holding, that a district court has some minimal amount of discretion to review an uncontested Rule 48(a) dismissal. See e.g. United States v. Gonzalez, 58 F.3d 459, 461 (9th Cir. 1995). The most recent Court of Appeals decision on this issue, In re: United States of America, 345 F.3d 450 (7th Cir. 2003), expressed considerable doubt whether any such discretion exists:

> We are mindful of speculations in some judicial opinions that a district judge could properly deny a motion to dismiss a criminal charge even though the defendant had agreed to it. . . . The Constitution does place judicially enforceable limits on the powers of the nonjudicial branches of the government-- . . . -- but they are limits found in the Constitution and thus do not include "bad faith" and "against the public interest." Custom, limited prosecutorial resources that compel prioritizing prosecutions, federal criminal statutes that overlap with each other and with state criminal statutes, plea bargaining, and the federal sentencing guidelines themselves combine to lodge enormous charging discretion in the Justice Department, to the occasional frustration of judges--yet without giving rise to any judicial remedy. [citations omitted]

Id. at 453-54.

However, even assuming that this Court has some discretion to review an uncontested Rule 48(a) dismissal, cases are

7

unanimous in recognizing only a very narrow, limited scope of discretion.[6]  The Fifth Circuit has stated: "The district court may not deny a government motion to dismiss a prosecution, consented to by the defendant, except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest." Hamm, 659 F.2d at 628.  The Seventh Circuit, in a case pre-dating In Re: United States of America, similarly stated:

> Since the judicial check on the prosecutorial power is a very limited one, a prosecutor's motion to dismiss must be granted unless "clearly contrary to manifest

---

[6] Before examining cases recognizing some judicial review of an uncontested Rule 48(a) dismissal on a bad faith or public interest justification, it is worth noting that the Seventh Circuit, in its September 2003 In Re: United States of America decision, stated: "We are unaware, however, of any appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis." In Re: United States of America, 345 F.3d at 453.  It is also worth noting that many Rule 48(a) decisions include a citation to or a quote from then-Circuit Judge Burger's decision in Newman v. United States, 382 F.2d 479, 480 (D.C. Cir. 1967): "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made or whether to dismiss a proceeding once brought." See, e.g., In Re: Richards, 213 F.3d 773, 786 )(3rd Cir. 2000); United States v. Martin, 287 F.3d 609, 623 (7th Cir. 2002); United States v. Hamm, 659 F.2d 624, 628, n. 13 (5th Cir. 1981); United States v. Jacobo-Zavala, 241 F.3d 1009, 1012 (8th Cir. 2001).  Finally, where the Rule 5(a) dismissal is uncontested and with prejudice, and filed before judgment enters, courts recognize that denial of leave to file the dismissal can have no substantive effect, as the judiciary cannot compel the Executive to prosecute in the face its unwillingness to go forward. In re: Richards, 213 F.3d at 786; In Re: United States of America, 345 F.3d at 454 (court lacked power to appoint a prosecutor to go forward after court denied uncontested Rule 48(a) dismissal).

> public interest." [citations omitted] Judicial
> discretion becomes extremely limited in circumstances
> where the prosecutor seeks to dismiss the indictment
> with prejudice and the defendant joins the motion.

Martin, 287 F.3d at 623; see also Jacobo-Zavala, 241 F.3d at 1013 ("The court is limited to assessing whether the government's motion is contrary to manifest public interest because it is not based in the prosecutor's good faith discharge of her duties."); United States v. Goodson, 204 F.3d 508, 512 (4th Cir. 2000) (uncontested Rule 48(a) motion had to be granted unless the dismissal "would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith.").

Before assessing the government's reasons for dismissing the indictment in this case, additional guidance from appellate decisions must be applied to the limited discretion this Court might have to review the government's uncontested Rule 48(a) dismissal. First, a "presumption of regularity" supports the Executive's prosecutorial decisions. United States v. Armstrong, 517 U.S. 456, 464 (1996). Second, district courts entertaining uncontested Rule 48(a) dismissals are required "to grant considerable deference to the prosecutor." Gonzalez, 58 F.3d at 461. Third, "[a]lthough [this Court] may take into account the public interest concerns created by dismissal of an indictment, it may not substitute its judgment for that of the prosecutor." Jacobo-Zavala, 241 F.3d at 1012. "Neither the trial court nor

[the court] on appeal can substitute its judgment for the prosecutor's determination or can second guess the prosecutor's evaluation." United States v. Salinas, 693 F.2d 348, 351 (5th Cir. 1983). Fourth, the initial determination of the public interest is for the prosecutor to make, who is the "first and presumptively the best judge of where the public interest lies." Hamm, 659 F.2d at 631. Fifth, the government does not bear the burden to prove that the dismissal is in the public interest; it must merely provide the court with sufficient reasons so that the court can exercise its very limited discretion. Hamm, 659 F.2d at 631, n. 23; Salinas, 693 F.2d at 352. Finally, the "good faith" of the prosecutor is not examined with respect to events transpiring before the dismissal, but rather the issue is whether the government's efforts to terminate the prosecution are tainted with impropriety. Rinaldi, 434 U.S. 30; Hamm, 659 F.2d at 629 ("the trial judge must look to the motivation of the prosecutor at the time of the decision to dismiss").

Given the government's explanation of its dismissal of the indictment that the Court now has in the amended Rule 48(a) dismissal and this memorandum, and the applicable law discussed above, this Court lacks power to deny the government leave to file its uncontested Rule 48(a) amended dismissal. The government's reasons for the dismissal go to the heart of the prosecutorial function, and involve the Executive's judgment of

10

its priorities, its limited resources, and its alternative remedies. This Court cannot either second guess the government's judgment, or substitute its own judgment for that of the prosecutor. Salinas, 693 F.2d at 351.

Moreover, this Court cannot find that the government's dismissal decision in this case is tainted with bad faith. Despite its belief that no Rule 5(a) violation occurred, the government has applied to itself the strictest possible reading of this Court's decisions in Cabral and Beckford, and will forego --for resource reasons--the opportunity to establish, as it did in Beckford, that the lapse of time between reinstatement of the prior order of deportation and the travel document request letter did not turn ICE's civil arrest of Tahsir into a de facto criminal arrest. The government dismisses the indictment in this case even though it has found no case, including Cabral, in which dismissal of an indictment was found to be an appropriate remedy for a non-prejudicial Rule 5(a) violation. See also Encarnacion, 239 F.3d at 400, n.5 (declining to decide "whether Rule 5(a) can ever be a basis for dismissal of an indictment absent evidence of unwarranted interrogation during the period of detention").

Finally, to the degree that the passage of time (with the normal turnover of personnel that typically occurs), since this Court's decision in United States v. Restrepo, 59 F. Supp. 2d 133 (D. Mass. 1999) brought changes to ICE's past practices, has

diminished ICE's commitment to remove expeditiously all administrative reinstatement cases, the dismissal of this indictment has provided an opportunity to reinforce with ICE the need to comply strictly with procedures designed to ensure that Rule 5(a) and speedy trial concerns are not implicated in the reinstatement and implementation of prior orders of deportation.[7]

Accordingly, the government asks this Court to grant leave to file the amended Rule 48(a) dismissal filed herewith.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Timothy Q. Feeley
TIMOTHY Q. FEELEY
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorneys
(617) 748-3172/3103

March 29, 2004

CERTIFICATE OF SERVICE

I, Timothy Q. Feeley, hereby certify that I have this 29th day of March 2004, served by hand a copy of the foregoing on counsel for the defendant, Martin Richey, Esq., Federal Defender Office, Boston, MA.

/s/ Timothy Q. Feeley
Timothy Q. Feeley
Assistant U.S. Attorney

---

[7] By so stating, the government does not mean to imply that ICE's commitment to move reinstatement cases quickly has diminished. In fact, travel document request letters in cases which are not presented to the United States Attorney's Office for prosecutorial consideration are generally made, according to ICE deportation officials, within one to three weeks from an alien's arrest. The travel document request for Tahsir fell well within that time-frame.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V.              )<br>)<br>YASIM TAHSIR           ) | CRIMINAL NO. 04-10037-MLW |

### APPEARANCE

The undersigned Assistant U.S. Attorney hereby appears as co-counsel in this case on behalf of the United States of America.

                                  Respectfully submitted,

                                  MICHAEL J. SULLIVAN
                                  United States Attorney

                           By:    /s/ Timothy Q. Feeley
                                  TIMOTHY Q. FEELEY
                                  Assistant U.S. Attorney
                                  (617) 748-3172

March 29, 2004


### CERTIFICATE OF SERVICE

    I, Timothy Q. Feeley, hereby certify that I have this 29th day of March 2004, served by hand a copy of the foregoing on counsel for the defendant, Martin Richey, Esq., Federal Defender Office, Boston, MA.

                                  /s/ Timothy Q. Feeley
                                  Timothy Q. Feeley
                                  Assistant U.S. Attorney